UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| CHATTANOOGA FIRE AND POLICE PENSION FUND, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 1:18-CV-131-TAV-CHS |
| WELLS FARGO BANK, N.A. | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on plaintiff Chattanooga Fire and Police Pension Fund's Motion to Remand [Doc. 8]. Defendant responded in opposition to the motion [Doc. 17], and plaintiff timely replied [Doc. 26]. Defendant then filed a supplemental brief [Doc. 23] to which plaintiff responded [Doc. 24]. For the reasons that follow, the Court will grant plaintiff's motion.

## I. Background

In this action, plaintiff Chattanooga Fire and Police Pension Fund ("the Fund") requests an accounting from defendant, the trustee of the Fund. On September 30, 2005, plaintiff and defendant entered into the Chattanooga Fire and Police Pension Fund Trust Agreement ("Trust Agreement"), by which plaintiff appointed defendant trustee of the Fund [Doc. 1-1 pp. 3]. On May 8, 2018, plaintiff filed this action in Hamilton County Chancery Court, requesting an injunction to compel defendant to provide a complete accounting of the Fund [Doc. 1-1 pp. 7]. Plaintiff alleges that defendant has failed to

provide this accounting despite its obligations to do so under the Trust Agreement and Tennessee law, and therefore seeks court intervention.

On June 14, 2018, defendant filed a Notice of Removal on the basis of diversity jurisdiction [Doc. 1]. The parties are clearly diverse: plaintiff is a citizen of Tennessee, and defendant is a citizen of South Dakota [Doc. 1-1 pp. 3]. But it is far less clear whether the amount in controversy surpasses the $75,000 threshold necessary to invoke diversity jurisdiction.

Defendant claims that it does. First, defendant asserts that the complaint is silent as to monetary relief and defendant can establish a substantial likelihood or reasonable probability that plaintiff intends to seek damages in excess of $75,000 [Doc. 1 p. 4]. Defendant alternatively asserts that its costs of complying with the injunction would exceed $75,000, thereby satisfying the amount [*Id.* at 5]. Plaintiff, however, filed the instant motion to remand this case to state court, arguing that defendant has failed to meet the amount-in-controversy requirement necessary to establish diversity jurisdiction [Doc. 8]. In the alternative, plaintiff urges the Court to remand this case pursuant to the *Burford* abstention doctrine.

**II.     Standard of Review**

After a plaintiff files a case in state court, a defendant may remove it to federal court when certain conditions are met. Pursuant to 28 U.S.C. § 1441(a), defendants may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." However, federal courts have limited

original jurisdiction and may only exercise "power authorized by Constitution and statute." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A presumption against federal jurisdiction exists, and federal courts must carefully guard against the temptation to expand beyond the jurisdictional bounds established by Congress. *See Kokkonen*, 511 U.S. at 377 ("Federal jurisdiction may not be 'maintained by mere averment,' 'inferred argumentatively,' or 'supplied by inference'.") (internal citations omitted); *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951) ("To permit a federal trial court to enter a judgment . . . where the federal court could not have original jurisdiction . . . [would] give district courts power the Congress has denied them."); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 391–92 (6th Cir. 2016) ("the presumptions… is[] that a cause is without its jurisdiction unless the contrary affirmatively appears.") (internal citation omitted). "[T]he general rule [is] that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit." *Jefferson Cty. v Acker*, 527 U.S. 423, 430 (1999) (citing § 1441(a)).

In general, a federal district court has original subject matter jurisdiction over two main types of actions. There is federal question jurisdiction, *see* 28 U.S.C. § 1331, which is not at issue here. The district court also has original jurisdiction over actions based on diversity of citizenship, where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of

different States." 28 U.S.C. § 1332. At issue in this case is whether the amount-in-controversy requirement has been satisfied for its purposes.

Federal jurisdiction is assessed at the time of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Because federal courts are courts of limited jurisdiction, any doubt concerning federal jurisdiction should be construed in favor of remanding the case back to state court. *Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108-09 (1941). The removing party must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. 28 U.S.C. § 1446(c)(2)(B); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554-55 (2014); *Rogers v. Wal-Mart Store, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). This burden requires the removing party to affirmatively produce "competent proof" of the necessary facts. *K2 Holdings, LLC v. New Cingular Wireless, PCS, LLC*, No. 5:16-CV-134-KKC, 2017 WL 1134398, at *3 (E.D. Ky. Mar. 27, 2017) (quoting *Walker v. ProNational Ins. Co.*, No. 12-cv-100, 2012 WL 6060368, at *2 (E.D. Ky, Dec. 5, 2012). If the court determines that the removing party has failed to meet this burden, the court should remand the case back to state court.

**III. Analysis**

Plaintiff seeks an accounting and associated costs as its sole cause of action [Doc. 1-1 pp. 3–4]. In its Notice of Removal, defendant asserts that the amount-in-controversy minimum is satisfied for two reasons. First, defendant argues that there is a substantial likelihood that plaintiff intends to seek upwards of $2 million in monetary damages, relying

primarily on a statement made by one of plaintiff's attorneys in a *Wall Street Journal* article regarding alleged improperly retained fee rebates [Doc. 1 pp. 4–5]. Defendant additionally submits that compliance with the requested accounting would force defendant to conduct a forensic analysis at a cost exceeding $75,000 [Doc. 1 p. 5].

Plaintiff argues that the amount-in-controversy requirement for diversity jurisdiction has not been met and that, in the alternative, remand is appropriate under the *Burford* abstention doctrine [Doc. 8]. With regard to the first argument, Plaintiff asserts that this Court may only look within the four corners of the complaint to find the amount-in-controversy, and here plaintiff only requests an accounting, not monetary relief. Plaintiff further argues that, when evaluating the costs of equitable relief, it is appropriate to look only at the value of the right plaintiff seeks to protect, not defendant's cost of compliance.

As an initial matter, the Court will only calculate damages based upon the relief requested within plaintiff's complaint. *See Siding and Insulation Co., Inc. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 369 (6th Cir. 2014) ("We appraise [the amount in controversy] from the plaintiff's complaint."); *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("Normally, the sum claimed by the plaintiffs controls.") (internal quotations and citations omitted); *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) ("A district court should consider the amount alleged in a complaint."). For those cases where injunctive relief is requested, rather than monetary compensation, "it is well established

that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

Here, plaintiff requests injunctive relief in the form of a court-ordered accounting. It further requests litigation costs and "any other general relief supported by the law and the facts" [Doc. 1-1 p. 7]. Defendant attempts to add $2 million in monetary damages to this claim, speculating that this amount will materialize somewhere in the course of litigation. Defendant points to a quote from Edward Siedle, one of plaintiff's attorneys, in *The Wall Street Journal*, dated May 9, 2018, wherein he stated that, in his view, improperly retained fee rebates from the Fund could reach almost $2 million [Doc. 1]. However, this number is conjecture and irrelevant for the purposes of this litigation, namely because plaintiff's complaint, viewed at the time of removal, makes no request for monetary compensation. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d at 822 ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal.").

Defendant nevertheless maintains that a court can look outside of the four corners of a complaint to determine the proper amount in controversy, and therefore this speculative figure can and should be incorporated into the Court's jurisdictional inquiry [Doc. 17 p. 8]. However, the cases defendant cites in support are inapposite to the facts at hand: in each, the plaintiffs *did* request monetary damages but merely failed to specify the amount requested. The courts therefore looked elsewhere to fill in the amount. For instance, in *Handler v. Home Depot U.S.A., Inc.,* 2003 WL 21105079 (N.D. Ohio Apr. 28,

2003), plaintiff's personal-injury claim requested over $48,000 in medical expenses already incurred as well as non-enumerated future medical and non-medical expenses. *Id.* at *1. To find the amount-in-controversy requirement met, the court considered the cost of the ongoing medical bills and special damages, even though plaintiff had not attached a specific monetary value to them. *Id.*

Similarly, in *Stephens v. Mitsubishi Electric Automotive America, Inc.*, 2002 WL 551033 (E.D. Mich. Mar. 29, 2002), a plaintiff asserted damages in the form of "past and future income and employee benefits, mental anguish and emotional distress, and loss of professional reputation." *Id.* at *1. In order to reach the jurisdictional minimum, defendant quantified plaintiff's lost earnings from his date of discharge to the anticipated trial date, and also calculated his front pay for a certain amount of years based on his age at discharge. The court used these calculations, among others, to find that the jurisdictional threshold had been met. *Id.*

Here, in contrast, plaintiff is not requesting monetary damages at all, and the amount in controversy at issue must thus be determined by looking to the value of the object of the litigation, as outlined in the complaint. *E.g.*, *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt*, 432 U.S. at 347) ("[T]he amount in controversy is measured by the value of the object of the litigation."). This calculation can include the costs of complying with an injunction. *Everett*, 460 F.3d at 829. However, as the Sixth Circuit noted in *Everett*, the key is determining how to calculate that cost, "whether from the perspective of the monetary value of the relief to the plaintiffs

7

(which will generally be modest) or the monetary value of the relief to the defendant (which may be great in some cases)." *Id*.

Circuits vary in how they calculate the costs of an injunction, and the parties agree that Sixth Circuit caselaw is unsettled in this area. Some circuits adhere to the 'either viewpoint rule,' which allows courts to consider either the injunction's benefit to the plaintiff or its cost to the defendant. *See Olden v. LaFarge Corp.*, 383 F.3d 495, 501 n. 1 (6th Cir. 2004) (detailing the circuit split). Other courts maintain a plaintiff-centric perspective, only allowing consideration of the plaintiff's benefit. *See id.* The Sixth Circuit, thus far, has "sidestepped this sedgy terrain." *Siding and Insulation Co.*, 754 F.3d at 372. However, the Sixth Circuit has stated that "[i]t is generally agreed… that the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (quoting *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 Fed. Appx. 194, 195–96 (6th Cir. 2005)).

Based upon this Sixth Circuit jurisprudence, the Court will evaluate the cost of the injunction from plaintiff's perspective. Defendant has not presented a compelling reason for the Court to deviate from the Sixth Circuit's preferred modus operandi, and moreover, the Court disagrees with defendant's reading of the Sixth Circuit's opinion in *Cleveland Housing*, which defendant purports opened the door to the Sixth Circuit's adoption and use of the either-viewpoint rule [Doc. 17 p. 5]. In *Cleveland Housing*, plaintiff, a not-for-profit housing-renewal project, requested injunctive relief to abate nuisances on twenty-five

8

parcels of property. The district court found the amount-in-controversy requirement satisfied based on defendant's costs of compliance. *Cleveland Housing*, 621 F.3d at 560. The Sixth Circuit affirmed with two qualifications: plaintiff had not offered an alternative valuation and the value to the plaintiff likely also exceeded $75,000. The circuit court therefore did not explicitly affirm the lower court's ruling based entirely on its defendant-centric viewpoint, and moreover affirmatively stated that the amount-in-controversy requirement would likely be met from the plaintiff's viewpoint as well. Several years later, in *Siding*, the court reaffirmed that it had not definitively given allegiance to either rule, and therefore the Sixth Circuit's preference to view the amount in controversy from the position of the plaintiff still stands. *Siding*, 754 F.3d at 372 ("Though declining to resolve the larger question of whether the 'either viewpoint rule' ever bears on amount-in-controversy disputes, we reject its application here.").

Against this background, defendant has failed to establish that there is a substantial likelihood that the amount-in-controversy minimum has been met. First, defendant's arguments focus almost entirely on its own potential cost of compliance with a court-ordered accounting. Defendant relies heavily on an affidavit submitted by James Shaw McGrath, a partner at Ernst & Young, who has been retained by defendant and who estimates that a court-ordered accounting would impose costs above $75,000 on defendant [Doc. 1-3]. However, as discussed above, the Court will adhere to Sixth Circuit preference and evaluate the injunction in terms of the economic value of the right that plaintiff seeks to protect, not the cost to the defendant.

9

Defendant fails to demonstrate, either in its Notice of Removal or in its response to plaintiff's motion, that the value of the accounting to plaintiff would exceed $75,000. Although the Court acknowledges that the benefit plaintiff will receive with an accounting is not negligible, the burden is on the defendant to affirmatively establish that the amount in controversy would likely exceed the jurisdictional minimum. Here, defendant does not even attempt to quantify the value of the injunction to plaintiff.[1] As discussed above, defendant instead focuses on unnamed, unasked-for monetary damages and its own costs. Defendant offers no other appropriate means of measuring the object of the litigation in this case.

Neither does defendant demonstrate that plaintiff's request for attorney fees adequately contributes to or meets the jurisdictional minimum. Plaintiff, in its complaint, requests its litigation costs, including attorney's fees, pursuant to T.C.A. §§ 35-15-1001(b)(10) and 35-15-1004. Section 1001(b)(10) provides, as a remedy for a trustee's breach of trust, "any other appropriate relief whether provided somewhere else in this

---

[1] Although defendant does not make this argument, the Court does not find persuasive the proposition that the value of the injunction to plaintiff should be considered greater than $75,000 based on Edward Siedle's statement in *The Wall Street Journal*. The Sixth Circuit has stated "[t]he law on this point is quite clear and the rule is that in injunction actions, the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented." *Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970). Without deciding the more general question of whether a quoted opinion of a party's counsel in a newspaper article can be used to establish the amount-in-controversy, the Court finds here that Siedle's statement relates entirely to the amount, in his opinion, that plaintiff might recover at law. As *Goldsmith* makes clear, this is different than the value of the right to be protected, which in this case would be the proper dispensation of defendant's duties as trustee of the Fund, or the extent of the injury to be prevented, which would be the injuries arising from a breach of these duties. *Id.* Defendant thus fails to establish the amount-in-controversy on this front as well.

chapter, available at common law or under equity principles." In the same chapter, section 1004 states:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

T.C.A. § 35-15-1004.

Generally, courts in our circuit may consider statutorily authorized attorney fees when calculating the amount in controversy based upon diversity jurisdiction. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007) ("[W]e have affirmed the general principle of considering statutorily authorized attorney's fees for the purposes of establishing jurisdiction."). However, the burden remains on the defendant to establish, by a preponderance of the evidence and with competent proof, that the amount-in-controversy requirement has been met. *See* 28 U.S.C. § 1446(c)(2)(B); *K2 Holdings, LLC*, No. 5:16-CV-134-KKC, 2017 WL 1134398, at *3. Apart from advocating that attorneys fees may be considered in this case, defendant has not provided this Court with any evidence regarding the anticipated amount of fees to be incurred or provided an estimation of reasonable costs.[2] Defendant therefore has not met its evidentiary burden demonstrating that plaintiff's attorneys fees, in combination with the value of the injunction, would meet

---

[2] This calculus was simpler in *Williamson v. Aetna Life Ins. Co.*, where plaintiffs requested actual damages of $74,999 in addition to an award of attorney's fees. 481 F.3d at 377. The court found that it was more likely than not that the potential cost of the claim would exceed $75,000 and therefore diversity jurisdiction was established. *Id.* Here, plaintiff does not seek any monetary damages, much less a sum so near the jurisdictional threshold, and the Court will not engage in guesswork to assign an arbitrary value to plaintiff's attorney's fees, especially, as in this case, where these fees could contribute substantially toward reaching the jurisdictional minimum.

the minimum amount-in-controversy required for diversity jurisdiction. In sum, defendant has failed to meet its burden demonstrating that this Court has diversity jurisdiction over the case. Given this determination, the Court will not consider the appropriateness of *Burford* abstention at this time.

## IV. Awarding Plaintiff Attorney's Fees

Plaintiff asks for attorney's fees under 28 U.S.C. § 1447(c), which gives the district court discretion to award a party attorney's fees incurred as a result of an improperly requested removal. Attorney's fees are appropriate in cases of remand when a defendant's argument for removal is "devoid of even fair support." *Bartholomew v. Town of Collierville*, 409 F.3d 684, 687 (6th Cir. 2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, defendant sought removal based on diversity jurisdiction. Defendant established that the parties themselves were diverse; at issue was the more problematic question of whether defendant properly established the required amount in controversy to give this Court original jurisdiction. Although the Court declined to accept defendant's argument, the Court does not find that defendant's assertions were so lacking as to be "devoid of even fair support" and will decline to award attorney's fees in this instance. *Bartholomew*, 409 F.3d at 687.

## V.     Conclusion

Defendant has not met its evidentiary burden demonstrating that this Court has original jurisdiction over the present action under 28 U.S.C. § 1332(a).  Because this Court finds that remand is proper in this case, it need not evaluate whether *Burford* abstention is appropriate.  For the reasons stated above, the Court **GRANTS** plaintiff's motion to remand this action [Doc. 8] and **REMANDS** this action to the Chancery Court of Hamilton County.  The Court **DENIES** plaintiff's request for attorney's fees, finding such relief unwarranted at this time.  The Clerk of Court is **DIRECTED** to **CLOSE** this case.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE


ENTERED AS A JUDGMENT

    s/ John L. Medearis    
      CLERK OF COURT